(C. D. 496)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 16, 1941)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the petitioner.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Frank E. Carstarphen,* special attorney), for the respondent.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is a petition for the remission of additional duty assessed for undervaluation on a quantity of household effects,

etc., covered by an entry made at the port of New York. The merchandise in question consists of a quantity of household furniture, etc., entered on a free entry form at a value of $3,000 by the plaintiff corporation who were customs brokers. It is conceded that the merchandise was imported for sale. The litigation seeks to recover the additional duty assessed because of the undervaluation under the provisions of section 489 of the Tariff Act of 1930, which reads:

SEC. 489. ADDITIONAL DUTIES.

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of exportation of the merchandise, nor shall they be subject to the benefit of drawback. All additional duties, penalties, or forfeitures applicable to merchandise entered in connection with a certified invoice shall be alike applicable to merchandise entered in connection with a seller's or shipper's invoice or statement in the form of an invoice.

Furniture described in paragraph 1811 shall enter the United States at ports which shall be designated by the Secretary of the Treasury for this purpose. If any article described in paragraph 1811 and imported for sale is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry, there shall be imposed, collected, and paid on such article, unless exported under

customs supervision, a duty of 25 per centum of the value of such article in addition to any other duty imposed by law upon such article.

At the outset the president of the importing corporation admitted that he had received advice from the agent in the United States of the owner before the intended shipment of the same to this country, which agent was to make the sale of the household goods in question. Thereafter, through his representative in Europe, he procured the contract for entering and transporting the goods to the warehouse of the selling agent, the American Art Association-Anderson Galleries, Inc. He had some correspondence about it later, which information he left in his desk prior to embarking on a West Indies cruise, where he was at the time of the arrival of the merchandise. It is admitted in the brief of the plaintiff and in the record that the president of the Hudson Shipping Co., Inc., the importing corporation, knew that the articles in this shipment were imported for the purpose of sale. The record shows that he did not disclose these facts to the employee who made the entry, and he seeks to justify that fact by stating that it was due to his preoccupation in his effort to get ready for his cruise, which was undertaken the day the merchandise arrived. One of the officers of the corporation who directed the making of the entry had some communication with the agents who were to sell the merchandise, but he claims he was not put upon notice by the fact that this concern was apparently a well-known auctioneer of art, art goods, and antiques. In any event, Mr. Frank L. Breiner, Jr., the secretary of the customs brokerage corporation, the petitioner herein, prepared a *pro forma* invoice and transmitted it, together with the packing list and declaration of the nominal consignee—made out by F. L. Breiner, attorney,—to the vice president of the importing concern, who in turn made an entry on the free entry customs form for 2 cases, Nos. 1 and 2. From an inspection of that entry it appears that the merchandise was entered under paragraphs 1631 (an error for 1632, apparently) and 1798 of the Tariff Act of 1930, so far as the articles valued at $3,000 are concerned. The testimony of Mr. Mercer of the brokerage corporation, who caused the entry to be prepared, states that he caused the entry to be made in accordance with what they indicated, household effects, under paragraph 1632. "They" refers apparently to exhibit 4, certificate listing the furniture, exhibit 5, declaration of nominal consignee (made by the plaintiff), exhibit 6, *pro forma* invoice (made by the plaintiff), and exhibit 9, the packing list. When interrogated as to how he determined the proper value at which to enter the merchandise, he stated that he relied upon the value given in the insurance policy which accompanied the bill of lading, which policy, by the way, was not produced in evidence.

From the beginning to the end of this transaction, so far as the importer is concerned, it appears to have been handled in an exceedingly careless manner. The knowledge of the president of the brokerage corporation as to the fact that the merchandise was intended for sale was notice or knowledge to the corporation of that fact for all judicial purposes. See 10 Cyc p. 1054. The subordinate officers who handled the entry papers disclaimed any knowledge of the intended purpose of the importation and claim that they were not put upon notice by the fact that it was destined to be delivered to a well-known firm of auctioneers where it finally was sold on an elaborate public catalog list (exhibit 13). The failure of the president of the importing corporation to transmit to the under officers of the organization, whose duty appears to have been to prepare the invoices, information which he possessed that was necessary in order to make a truthful and lawful entry of the merchandise amounted to gross negligence. Whether gross negligence in a situation of this kind amounts to a fraud on the revenue is a question. The knowledge which the president possessed, as was stated above, is imputed to all the officers of the corporation.

On the question of fraud the authorities recite that "Since every fraud must be committed against a being capable of rights, 'fraud upon the law,' is a fraud upon an individual, a corporation, or the sovereign; generally *an evasion of some statute* such as the Bankruptcy Act, where the offense is nothing but a fraud upon creditors, or the liquor laws, where the offense is a fraud upon the sovereign." If this negligence amounted to fraud it constituted a fraud in evasion of the statute. But whether or not that is true, it is not necessary for us here to decide because we are of the opinion that the person making the entry did so upon a wrong basis of fact. He stated that he made entry upon information furnished by the insurance policy, that is, he accepted the value at which the insurance was written. Insurance concerns are not engaged in buying and selling merchandise. A policy may be written for more or it may be written for less than any value known to customs law. We know of no precedent that would have warranted an experienced broker to rely solely on such information.. This fact, coupled with the other circumstances of this case, persuades the court that this transaction does not disclose the good faith required to exist between the broker and the customs officials.

It is a singular fact that the president of the concern who had knowledge of the facts, and who returned within the time during which he might have caused an amendment to this entry, failed to do so. The vice president claimed that he was waiting for the arrival of the consular invoice. Did he hope that said consular invoice would state facts sufficient to lull the customs officials into the belief that the merchandise was household effects, not imported for sale? The importer had legal knowledge that such was not the fact.

Other questions concerning the proper method of valuation need not here be discussed.

It is true that the case of *Fish* v. *United States*, 12 Ct. Cust. Appls. 307, T. D. 40315, affirmed in 268 U. S. 607, held that mere carelessness in making entries is not sufficient to impute to a petitioner an intention to defraud the revenue or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise. Nevertheless, from all the evidence in this case, we are of the opinion that the importer has not acted in good faith in that it failed and neglected, without reasonable excuse, to disclose to the customs officials facts within its possession as to the nature and character and intended use of the merchandise in question.

For the foregoing reasons the petition is therefore denied.

Judgment will be rendered accordingly. It is so ordered.